UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| AMY R., | Case No. 19-CV-1508 (KMM) |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW SAUL, | |
| Defendant. | |

---

This matter is before the Court on cross-motions for summary judgment filed by Ms. R. (ECF No. 16) and the Commissioner of Social Security, Andrew Saul. (ECF No. 18.) The Court heard oral argument on these motions at a video hearing on May 14, 2020 and issued a detailed ruling on the record. This Order is intended to briefly set forth the reasoning of the Court's ruling.

The Court's evaluation of the Commissioner's determination regarding eligibility for social security benefits is performed with great deference to the ALJ. *See Kelley v. Barnhart*, 372 F.3d 958, 960 (8th Cir. 2004). The Court only reviews the ALJ's conclusions to determine whether they are consistent with the law and whether they are supported by substantial evidence in the record as a whole. *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006); *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). Where substantial evidence supports an ALJ's findings, the Court should not reverse those findings merely because other evidence exists in the record to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994).

Ms. R. first argued that the ALJ erred when he failed to consider Ms. R.'s PHQ-9, GAD-7, and LOCUS scores as objective evidence of severe depression and anxiety. The Court disagreed with Ms. R.'s arguments. First, the PHQ-9 and the GAD-7 are measurements that are derived solely from the patient's report of their own subjective experience. The Court found that to rule that the tests are not subjective would unacceptably blur the line between subjective and objective tests.

The LOCUS score is a more objective measurement, but it does not serve as a diagnostic device. Instead, it is a tool used to communicate amongst members of a treatment team that helps maintain a standard of care for an individual patient. This does not line up with a disability determination. At least one other court has rejected an argument similar to Ms. R.'s. *Douglas M. v. Saul*, 2019 WL 6130817 (N.D. Ill. Nov. 19, 2019). In *Douglas M.*, the court held that the LOCUS score is not a medical opinion because it is not a "statement[] from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments." *Id.* at *6. Because the LOCUS score considers many factors not relevant to the disability decision (such as social and cultural factors), and does not articulate particular restrictions on work or other daily activities resulting from the claimant's impairments, the ALJ did not need to consider it. *Id.*

Following the reasoning in *Douglas M.*, the Court held that the ALJ was not required to discuss Ms. R.'s LOCUS score. However, with respect to the PHQ-9 and the GAD-7, it would have been better had the ALJ discussed the scores in his decision. Though they are subjective evidence, they are still relevant to the disability determination. However, the ALJ's failure to be more explicit is ultimately harmless error. Evidence in the record as whole supports the ALJ's decision on Ms. R.'s eligibility for benefits and the scores at issue do not require a different result. For example, Ms. R. was regularly noncompliant with treatment. (R. 570, 689, 817, 836, 1054, 1057.) Lexapro in particular seemed to be effective in treating Ms. R., but she refused to take it. (R. 834, 851.) Refusal to follow treatment, particularly treatment that is effective for the patient, weighs against a finding of disability. *See, e.g., Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Additionally, Ms. R.'s course of treatment was relatively conservative, with no referrals to inpatient or day treatment programs. *See, e.g., Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015). Finally, there is evidence that Ms. R. worked during the relevant time period and left those jobs for

reasons not related to her disability.  For example, in June 2014 she reported working in housekeeping at a resort (R. 30, 446); she also worked as a teacher briefly before being laid off due to not enough hours (R. 30, 442); and she worked in an assisted living facility, which was temporary but she was later asked to return to the position—she declined the offer because she believed her coworkers did not like her.  (R. 30-31, 588.)  She also reported not looking for work due to lack of childcare.  (R. 31, 560.)  Additionally, Ms. R. reported working with a job coach briefly, whom she told she would do a housekeeping job if one became available. (R. 31, 518.)  Seeking work while applying for disability benefits, or not working for reasons other than disability, support the ALJ's finding of no disability.  *See, e.g.*, *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Miles v. Barnhart*, 374 F.3d 694, 699 (8th Cir. 2004); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

Ms. R. next argued that the ALJ erred by failing to incorporate the recommendation that Ms. R. work only in a low-stress environment into the RFC.  The Court disagreed.  While the RFC did not specifically say the phrase "low-stress," such a limitation was adequately contemplated.  In his hypothetical to the VE, the ALJ added a prohibition on fast-paced work.  The ALJ went on to define fast-paced work as "work that requires constant handling, fingering, or reaching." (R. 84.)  Ms. R. argued that this definition did not adequately protect Ms. R. from fast-paced or high-stress jobs that did not require constant physical manipulation of objects.  As an example, Ms. R. argued that job requiring fast-paced answering of phone calls would be exempt from the no fast-paced work restriction as defined by the ALJ.  Though the Court accepts Ms. R.'s assertion that we can imagine some fast-paced work might not be excluded from the restrictions by the ALJ's definition, it finds that this error is harmless.  A number of additional restrictions in the RFC were clearly designed to lower the stress required by a job, and those limitations would preclude the types of jobs that the poor wording of the pacing limitation might have overlooked.  In addition to the no fast-paced work restriction, the ALJ limited the contact with the public, coworkers, and supervisors required.  This set of limitations, when combined, adequately describes a low-stress environment.

Finally, Ms. R. argued that the ALJ's hypothetical question to the Vocational Expert did not accurately set forth Ms. R.'s intellectual and academic limitations, which rendered the VE's testimony insufficient to support the ALJ's decision.

3

Specifically, Ms. R. argued that because her IQ is in the 7th percentile, she could not perform the jobs suggested by the VE, which require a general learning ability of the 10th percentile. However, the Court found that this argument did not carry the day. Unlike IQ, neither party could point to a scale for determining the general learning ability of an individual. Therefore, the Court is forced to look at other evidence determine that person's general learning ability.

The Sixth Circuit wrestled with similar issues in *Griffith v. Commissioner of Social Security*, 582 Fed. Appx. 555, 565 (6th Cir. 2014). In *Griffith*, the Court rejected an argument very similar to Ms. R.'s for two reasons. First, the petitioner had provided no evidence apart from her IQ to demonstrate that her general learning ability was in the bottom 10% of the population. Second, the ALJ in *Griffith* had referenced substantial evidence for the conclusion that the petitioner's general learning ability was *not* in the bottom decile, including "the longitudinal record established that the claimant is able to function independently, read most things, work when she chooses, maintain and operate her own vehicle and deal with simple instructions, and that her most recent health treatment notes reflect no evidence of impairment in the area of daily living/personal care." *Id.*

When the analysis of *Griffith* is applied to Ms. R.'s case, it supports the ALJ's treatment of Ms. R.'s intellectual impairments as relevant but not controlling. Here, the record demonstrates that Ms. R. is a very active parent of three children, two with special needs of their own. She is able to get them needed psychiatric appointments and medications, sign them up for available services, and attend IEP meetings and advocate for her children's needs. (*See* R. 48-49, 472, 492, 890-944 (2017 therapy records discussing her children's needs and her challenges and actions while parenting them).) Ms. R.'s parenting efforts demonstrate an ability to navigate complex systems, as well as some level of literacy. In addition, she reported reading books with her children daily. (R. 303.) Though Ms. R. cannot drive, there is evidence in the record to suggest that this is due to her anxiety, not due to a lack of intellectual capacity. (R. 45-46, 494.) Overall, there is no evidence that her intellectual abilities prevent her from being able to do the jobs recommended by the VE. Accordingly, there was no error in the hypothetical put to the VE.

Accordingly, upon all of the files, records, and proceedings herein, and for the reasons stated on the record at the hearing, IT IS HEREBY ORDERED that:

1. Ms. R.'s Motion for Summary Judgment (ECF No. 16) is DENIED
2. The Commissioner's Motion for Summary Judgment (ECF No. 18) is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY

Dated: June 10, 2020                    __/s/ *Katherine M. Menendez*_____
                                        Katherine M. Menendez
                                        United States Magistrate Judge